UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| TERESA CHANDLER,  )<br>  )<br>    Plaintiff,  )<br>  )<br>V.  )<br>  )<br>PEOPLES BANK & TRUST CO. OF  )<br>HAZARD,  )<br>  )<br>    Defendant.  ) | Civil No. 6:17-CV-00050-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

After a debtor files a petition for bankruptcy, the debtor may voluntarily reaffirm any debt obligation that would otherwise be discharged during bankruptcy proceedings. A reaffirmation agreement between the debtor and the creditor allows the debtor to keep the collateral he or she would potentially forfeit in bankruptcy by agreeing to remain liable for the debt. This case comes before the Court because Ms. Chandler signed such an agreement with Peoples Bank & Trust Company of Hazard to reaffirm debt owed by Ms. Chandler on her mobile home. However, Ms. Chandler later sued Peoples Bank because of a disagreement in how Peoples Bank applied her payments to the loan balance. Peoples Bank filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [R. 33], and Ms. Chandler subsequently filed a Response [R. 34]. For the foregoing reasons, Defendant Peoples Bank & Trust Co. of Hazard's Motion is **GRANTED**.

**I**

Plaintiff Teresa Chandler and her husband, Jerry Chandler, took out a loan with Peoples Bank on May 7, 2012, secured by their mobile home. [R. 31 at ¶ 5.] This loan was for $9,882.32 at an interest rate of 11.00% to be paid over the course of four years. *Id.* at ¶ 7. The

Chandlers were to pay $136.19 due on the seventh of every month for forty-seven months, plus a balloon payment of the remaining balance due on May 7, 2016, for a total of forty-eight payments. *Id.* Ms. Chandler and her husband filed for Chapter 7 Bankruptcy relief on July 30, 2013. *Id.* at ¶ 9. At the time of filing, Ms. Chandler admits she had made thirteen timely payments, but had not yet paid the $136.19 due on July 7, 2013. *Id.* at ¶ 10. Peoples Bank filed a Proof of Claim, stating the principle remaining on the loan was $9,260.38, plus $164.94 in accrued interest and $40.86 in late fees, for a total of $9,466.18 due to Peoples Bank.[1] [R. 31-1 at 4.] On August 8, 2013, after filing bankruptcy but before entering a reaffirmation agreement, Ms. Chandler made her fourteenth payment of $136.19 to Peoples Bank. [R. 31 at ¶ 11.] Peoples Bank applied that payment to the missed July 7, 2013, payment. *Id.* at ¶ 25.

Nearly a week later, on August 14, 2013, Peoples Bank generated a Reaffirmation Agreement. [R. 33-1 at 11.] The new agreement reaffirmed a debt of $9,355.02. [R. 31-2 at 2.] This reflects the original $9,466.18 due at the time of bankruptcy less the $136.19 paid on August 8, plus additional interest accrued after the Proof of Claim was generated. [R. 33-1 at 5.] Ms. Chandler and her husband signed the agreement on August 20, 2013, their attorney signed the agreement on August 21, 2013, and Peoples Bank signed on August 26, 2013. [R. 31-2 at 7.] Therefore, the earliest the Reaffirmation Agreement could have been in place was on August 20,

---

[1] Ms. Chandler argues that the $9,260.38 amount in the proof of claim includes the $164.94 and $40.86 because of the language used in the Proof of Claim form. [R. 34 at 12.] Instead, the Statement attached to the Proof of Claim states that the total owed amount, including interest and late charges, was $9,466.18 and that the principle amount was $9,260.38. [R. 31-1 at 4.] Ms. Chandler asks this Court to take notice of the $9,260.38 amount as the total amount, including fees and interest, owed by Ms. Chandler at the time of filing. However, this proof of claim has no impact on the amount Ms. Chandler reaffirmed a few weeks later. Additionally, if Peoples Bank was in fact supposed to include fees and interest, this appears to be a mistake or misunderstanding of the form. The Sixth Circuit freely allows amendments to proofs of claims when justice so requires. *In re Meade Tool & Die Co.*, 164 F.2d 228, 230 (6th Cir. 1947). Had Peoples Bank not reaffirmed the debt with Ms. Chandler, they would have had the opportunity to correct this mistake.

2013, and the earliest Ms. Chandler could have relied on the contract was on August 14, 2013, when the agreement was generated. Ms. Chandler agreed to thirty-four months of payments, beginning on August 7, 2013, at the original payment amount of $136.19 per month, except for the final payment on May 7, 2016, when any remaining balance would be due. *Id.* at 5. Prior to the entry of this agreement, on August 19, 2013, Ms. Chandler had made fourteen of the forty-eight total payments and had not made the payment that was due August 7, 2013.

The reaffirmation agreement did not change the credit terms: the balance due, annual percentage rate, and monthly payment each remained the same after the reaffirmation agreement as they were on the date of filing bankruptcy. *Id.* The reaffirmation agreement became effective upon filing with the court on September 11, 2013. *Id.* at 5 (stating debtor was represented by an attorney and creditor was not a credit union), 9.[2] Ms. Chandler did not tender another payment until October 3, 2013. [R. 31 at ¶ 32.]

Ms. Chandler's complaint focuses on how Peoples Bank should have applied the payment made on August 8, 2013. Ms. Chandler believes that the payment, made after the August 7, 2013, "start date" of the Reaffirmation Agreement, should be applied to the August 7, 2013, due date. *Id.* at ¶¶ 20–27. Peoples Bank maintains that the payment, made prior to the formation of the Reaffirmation Agreement, was correctly applied to the July 7, 2013, due date.

---

[2] Ms. Chandler also argues that the Bankruptcy Court would not have accepted the agreement if the debtor began performance in default. [R. 34 at 17.] However, the Court was only required to find the agreement was in the debtor's best interest if the debtor *was not represented by an attorney* during the course of negotiations. 11 U.S.C. § 524(c)(6)(A). Ms. Chandler and her husband were represented by an attorney, evidenced by the signature in Part IV of the Reaffirmation Agreement. [R. 31-2 at 7.] Thus, beginning the performance of the Reaffirmation Agreement was permissible, so long as the attorney representing the debtor declared that he or she advised the debtor of the consequences of the agreement and that the agreement did not pose a hardship to the debtor. 11 U.S.C. § 564(c)(3). Claims relating to whether Ms. Chandler's previous attorney complied with this section are not appropriate for review in this matter.

[R. 33-1 at 5.] Because of this discrepancy between how Ms. Chandler believes the payment should have been applied and how Peoples Bank actually applied the payment, Peoples Bank reported her to credit reporting agencies as being past due for several occasions when Ms. Chandler either believes she was not past due, or not as many days past due as Peoples Bank reported her to be. Ms. Chandler and her husband disputed the credit reports to Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC. [R. 31 at ¶ 56–62.] Peoples Bank maintains that their application of Ms. Chandler's payments is correct, and therefore, Peoples Bank had no duty to provide updated information to the credit reporters. [R. 33-1 at 13–14.]

According to Ms. Chandler, creditors report a payment as "past due" to a credit reporting company once the payment is at least thirty days past due. [R. 31 at ¶ 28–29.] A payment made between thirty and fifty-nine days late is reported as a "thirty-day late entry," a payment made between sixty and eighty-nine days past the due date is reported as a "sixty-day late entry," and a payment made more than ninety days past the due date is reported as a "ninety-day late entry." [R. 34 at 3–4.] The following is a summary of the payments made and why Ms. Chandler believes Peoples Bank incorrectly reported them to her credit reporting agencies:

1. When Ms. Chandler rendered a payment on August 8, 2013, Ms. Chandler believed that payment was due on August 7, which would have been one day late and not reported to credit agencies. [R. 31 at ¶¶ 25–29.] Peoples Bank believed this payment was due on July 7, thus thirty-two days late. *Id.*

2. Ms. Chandler made her first post-reaffirmation payment on October 3, 2013, which she believed was due on September 7 (twenty-six days late) and Peoples Bank

4

believed was due on August 7 (fifty-seven days late). *Id*. at ¶ 32–33. Peoples Bank reported Ms. Chandler's account was thirty days late for August of 2013. *Id.* at 35.

3. Ms. Chandler made a second payment that month on October 31, 2013, which she believed was due on October 7 (twenty-four days late) and Peoples Bank believed was due on September 7 (fifty-four days late). *Id*. at ¶36–37. Peoples Bank reported Ms. Chandler's account was thirty days late for September of 2013. *Id*.

4. Ms. Chandler made another payment on December 30, 2013, which she believed had been due on November 7 (fifty-three days late),[3] but Peoples Bank applied the payment to the October 7, 2013, due date (eighty-four days late). *Id.* at ¶¶ 39–40. Peoples Bank reported Ms. Chandler's account was sixty days late in October 2013. *Id.* at ¶ 38.

5. Ms. Chandler made the next payment on February 14, 2014, which Peoples Bank applied to the November 7, 2013, due date (ninety-nine days late), but Ms. Chandler believes should have been applied to the December 7, 2013, due date (sixty-nine days late). *Id.* at ¶¶ 42–43. Peoples Bank reported this payment as a ninety-day late entry for November.[4] *Id.* at 41.

6. Ms. Chandler rendered two payments on February 25, 2014. *Id.* at ¶ 44. Peoples Bank applied one of these to the December 7, 2013, due date (eighty days late), though she believes it should have been applied to the January 7, 2014, due date

---

[3] Ms. Chandler admits this was at least thirty days late, and therefore reportable to the credit reporting agencies, but believes it should have been reported as thirty days late for November, not sixty days late for October. [R. 31 at ¶ 41.]

[4] *See supra* note 3. Ms. Chandler admits this was late, but believes it should be sixty days late for December, not ninety days late for November. [R. 31 at ¶ 41.]

(forty-nine days late). *Id.* at ¶ 45. Peoples Bank applied the other payment to the January 7, 2014, due date (forty-nine days late), though Ms. Chandler believes it should have applied to her February 7, 2014 payment (eighteen days late). *Id.* at ¶ 46.

After her three payments on February 25, 2014, Ms. Chandler believed she was current on her loan payments through February. *Id.* at ¶ 47. She continued payments with the assumption that third February 25 payment was applied to her February 7 due date. On March 6, 2014, she made a payment believing it was due March 7 (not late), when Peoples Bank applied it to the February 7 due date (twenty-seven days late). *Id.* at ¶¶ 48–49. This continued through June 2016, when Ms. Chandler finally paid off the remaining balance of the loan. Each month, she believed she was paying only a few days late, but Peoples Bank applied her payments to the previous month, adding thirty days to what Ms. Chandler believed she was late. Accordingly, Peoples Bank reported Ms. Chandler as late on her remaining payments by at least thirty days. *Id.* at ¶¶ 52–53.

In March of 2016, Ms. Chandler and her husband sent multiple dispute letters to Equifax, Experian, and Trans Union. *Id.* at ¶ 56. She claims that these credit reporting agencies should have sent Peoples Bank notice of these disputes, triggering a duty for Peoples Bank to reinvestigate Ms. Chandler's loan repayment history under 15 U.S.C. § 1681s-2(b). *Id.* at ¶ 57. According to her, Peoples Bank failed to conduct a reasonable investigation and falsely verified the accuracy of the disputed negative credit information. *Id.* at ¶ 58. Ms. Chandler sued Peoples Bank for violations of 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, and state law breach of contract. *Id.* at ¶¶ 63–76. As to her claims under §§ 1681n and 1681o, Ms. Chandler claims Peoples Bank failed to comply with duties required under § 1681s-2(b). *Id.* Peoples Bank filed a Motion to

Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6). [R. 33.] This motion has been fully briefed.

## II

### A

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of Ms. Chandler's complaint. In reviewing a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). In the complaint, Plaintiff attached four exhibits. The Court may consider these exhibits without converting this Motion to a motion for summary judgment because these exhibits were attached to the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### B

As to Plaintiff's claims under §§ 1681n and 1681o, Ms. Chandler claims Peoples Bank failed to comply with duties required under § 1681s-2(b). *Id.* Section 1681n prohibits willful noncompliance with these duties and § 1681o prohibits negligent noncompliance. For a claim to arise out of either statute, Peoples Bank must first be in violation of the duties of § 1681s-2(b).

7

Pursuant to 15 U.S.C. § 1681s-2(b), a person who regularly and in the ordinary course of business provides credit information to at least one consumer reporting agency about that person's transactions or experiences with a consumer and who has furnished information to a consumer reporting agency that the person decides is not complete or accurate has a duty to promptly notify the consumer reporting agency of the inaccuracy and provide corrections or additional information necessary to correct the information provided to the consumer reporting agency. A "person" includes any individual, partnership, or corporation. 15 U.S.C. § 1681a(b). Ms. Chandler contends that Peoples Bank is a corporation [R. 31 at ¶ 4], and thus Peoples Bank is a "person." A "consumer" is any individual. §1681(c). Ms. Chandler declares she is a "natural person" and a "consumer" under this meaning. [R. 31 at ¶ 3.] Peoples Bank does not object to these classifications. She has alleged Peoples Bank regularly provided credit information to consumer reporting agencies, namely Experian, Equifax, and Trans Union. *Id.* at ¶¶ 4, 56. Therefore, once Peoples Bank decides such information is incomplete or inaccurate, it has a duty to notify the agencies of the inaccuracies or incompleteness and remedy such deficiencies. Peoples Bank does not dispute this duty. However, this duty requires that the information is inaccurate or incomplete. Peoples Bank maintains the information provided concerning Ms. Chandler's credit is all complete and accurate, and therefore no duty existed.

## C

Ms. Chandler's complaint must contain sufficient factual matter that, if accepted as true, would state a claim for violations under 15 U.S.C. §§ 1681n and 1681o, and thus demonstrate a breach of duties under § 1681s-2(b). *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel &*

*Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). The allegedly incorrect information comes from Peoples Bank applying Ms. Chandler's payments in a different manner than she believed the payments should have been credited. The parties agree on when she made payments, and the Court will accept these factual allegations as true for the purposes of this motion. Ms. Chandler relies on the Reaffirmation Agreement to show that Peoples Bank misapplied the payments. She argues their practice violated the terms of the Reaffirmation Agreement, resulting in a breach of contract. This alleged breach is why the information provided to the credit reporting agencies is believed to be incorrect. Thus, Ms. Chandler's federal claims rely on her state law claim that Peoples Bank breached its contract. The existence of a private contract is a creation of state law, not a federal question. *See Teague v. Brotherhood of Locomotive Firemen and Enginemen*, 127 F.2d 53, 55 (1942) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)). Because this Court is exercising supplemental jurisdiction over the state law contract claim, this Court must apply the law of Kentucky, including Kentucky's choice of law rules. *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). These transactions are wholly connected with Kentucky, and therefore this Court applies Kentucky law. *See id.*

A contract must be construed as a whole, if possible, by giving effect to all parts and words in it. *Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.*, 94 S.W.3d 381, 384–85 (Ky. 2002). Interpretation of a contract, including whether the contract is ambiguous, is a question of law for the courts to decide. *Id.* at 385; *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992). Without existence of an ambiguity, the Court must determine the parties' intentions from the four corners of the document, without assistance of extrinsic evidence. *Cantrell*, at 385. A contract is ambiguous if it is susceptible to inconsistent reasonable

9

interpretations. *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. 1994). However, a contract is not ambiguous simply because two parties intended different results. *Cantrell*, at 385.

### 1

The Court first turns to Ms. Chandler's post-petition payment on August 8. To succeed on a claim for a breach of contract, Ms. Chandler must establish the existence of a contract, a breach of that existing contract, and damages resulting from the breach. *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2008). However, in Kentucky, an enforceable contract is not created until an offer is accepted. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 314 (6th Cir. 1997). Thus, when Peoples Bank sent the Reaffirmation Agreement to Ms. Chandler on August 14, 2013, this was the offer. When Ms. Chandler signed the Reaffirmation Agreement on August 20, 2013, this was the acceptance. The Reaffirmation Agreement was therefore not enforceable until at least August 20, 2013. When Ms. Chandler sent a payment on August 8, 2013, there was no enforceable Reaffirmation Agreement in place. The only enforceable agreement on August 8 was the original loan agreement between Peoples Bank and Ms. Chandler, which had a due date of July 7, 2013. Without an enforceable Reaffirmation Agreement, Peoples Bank could not have "violated the plain terms of the Reaffirmation Agreement" as Ms. Chandler claims. [R. 31 at ¶ 27.] Therefore, concerning the payment made on August 8, 2013, Ms. Chandler fails to state a claim for breach of contract upon which relief can be granted.

### 2

The failure to state a breach of contract as the August 8 payment does not necessarily preclude Ms. Chandler from succeeding on the remaining payments, as the Reaffirmation

10

Agreement was in place prior to any additional payment made by Ms. Chandler.[5] Having found that the August 8 payment was correctly applied to the July 7 due date, the Court turns to whether the next payment on October 3, 2013, was correctly applied to the August 8 due date.

The agreement states, "D. Reaffirmation Agreement Repayment Terms: $136.19 per month for 34 months starting on 8-7-13," and underneath, "with all remaining principal and interest due at maturity." [R. 31-2 at 5.] At the time of formation of the Reaffirmation Agreement, Ms. Chandler's previous payment on August 8 had already been applied to her July 7 due date. Prior to filing bankruptcy, Ms. Chandler had made thirteen monthly payments, meaning that per the original agreement, she had thirty-five payments remaining. [R. 31 at ¶ 7–10.] The Reaffirmation Agreement incorporated this August 8 payment into the contract, reducing the amount owed by $136.19 (exclusive of additionally accrued interest) and reducing her number of payments to thirty-four. [R. 31-2 at 5.] The Reaffirmation Agreement repayment terms were to begin on August 7, 2013, the due date of the fifteenth payment. *Id.*

However, the agreement is silent as to Ms. Chandler's payment history. *See id.* It does not state that her payment history would be "reset," nor does it state that the previous payment on August 8 would be reapplied to the August 7 due date. Ms. Chandler cannot point to anything, neither evidence in the contract itself nor extrinsic evidence, to suggest the parties planned to reapportion the August 8 payment to July 7 or that the parties anticipated the next payment to be due on September 7. Additionally, if the parties had intended to eliminate Ms. Chandler's responsibility to pay either the July 7 or the August 7 payment, as she suggests, the reaffirmation

---

[5] Neither party contests the validity of the Reaffirmation Agreement.

agreement would have changed the number of payments remaining from thirty-four to thirty-three. It does not.

Ms. Chandler's interpretations of the contract do not logically result from the text of the Reaffirmation Agreement and the circumstances under which the contract was signed. Therefore, the Court finds the Reaffirmation Agreement is unambiguous. *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. 1994). Without existence of an ambiguity, the Court must determine the parties' intentions from the four corners of the document, without assistance of extrinsic evidence. *Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.*, 94 S.W.3d 381, 385 (Ky. 2002). Giving effect to all words and parts in the Reaffirmation Agreement, the Court interprets the agreement to re-establish the terms of the original agreement, with payments of $136.19 due on August 7, 2013, and monthly thereafter. [*Compare* R. 31-1 *with* R. 31-2.] Therefore, Ms. Chandler's first post-agreement payment on October 3, 2013, was correctly applied to the August 7 due date. Accordingly, the payment made on October 31, 2013, was correctly applied as due on September 7; the payment made on December 30, 2013, was correctly applied as due on October 7; the payment made on February 14, 2014, was correctly applied as due on November 7; the first payment made on February 25, 2014, was correctly applied as due on December 7; and the second payment made on February 25, 2014, was correctly applied as due on January 7. The payments made thereafter were also correctly applied to the previous month's due date. Therefore, in relation to the payments made beginning August 20, 2013, and continuing through June of 2016, the Court finds Ms. Chandler has failed to state a claim for breach of contract upon which relief can be granted. Ms. Chandler's breach of contract claims must be dismissed.

**D**

Without a breach of contract claim, Ms. Chandler's remaining claims for violations of the FCRA also fail. To be liable for a breach of duties under 15 U.S.C. § 1681s-2(b), the information provided to credit reporting agencies must first be inaccurate. Ms. Chandler claims the information reported by Peoples Bank is inadequate because Peoples Bank breached the Reaffirmation Agreement. However, the Court has now found Peoples Bank complied with the applicable contracts and correctly applied Ms. Chandler's payments. Therefore, the information furnished to credit reporting agencies is correct under the original agreement and the Reaffirmation Agreement. Without inaccurate information, Peoples Bank had no duty to correct the information under § 1682s-2(b). Without the existence of that duty, Peoples Bank could not be liable for claims brought under §§ 1681n or 1681o. Thus, Ms. Chandler has also failed to state a claim for violations of the FCRA upon which relief can be granted.

**III**

Ms. Chandler chose to reaffirm debt that might otherwise have been discharged in bankruptcy. In doing so, she agreed to continue payments under the terms of the new agreement. However, this Reaffirmation Agreement merely reiterated the terms of the original loan agreement, and neither party contracted to forgive the payment she had already missed. Accordingly, for the aforementioned reasons, it is hereby **ORDERED** that Defendant Peoples Bank & Trust Co.'s Motion to Dismiss [**R. 33**] is **GRANTED**. All claims asserted by Plaintiff Theresa Chandler against Defendant Peoples Bank & Trust Co. are **DISMISSED WITH PREJUDICE**.

This the 26th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge